UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-14001-CIV-MARTINEZ/MAYNARD

**YOLANDA WOODS,**
as the Personal Representative of the Estate
of Alteria Woods,

  Plaintiff,
**v.**

**CHRISTOPHER REEVE**, *et al.*,

  Defendants**.**
_____/

### ORDER DENYING DEFENDANTS' JOINT MOTION TO COMPEL PLAINTIFF'S MENTAL HEALTH AND PSYCHIATRIC RECORDS ("MOTION TO COMPEL") (DE 204)

**THIS CAUSE** is before me upon the above Motion to Compel. DE 204. The District Judge has referred this case to me for disposition of all pretrial discovery motions pursuant to 28 U.S.C. § 636 and the Magistrate Rules of this District's Local Rules. DE 41. I have reviewed the Motion to Compel, the Response (DE 214), the Reply (DE 225), and the record in this case. In addition, on December 15, 2022, I heard oral argument from the parties ("Motion Hearing"). DE 230. For the reasons discussed below, the Motion to Compel (DE 204) is **GRANTED IN PART AND DENIED IN PART**.

This action stems from the death of twenty-one-year-old Alteria Woods ("Alteria"), daughter of Plaintiff Yolanda Woods, following law enforcement's execution of a residential search warrant on March 19, 2017. DE 159 at ¶¶ 1-6. In particular, Plaintiff alleges that Officer Rick Sarcinello shot Alteria Woods—an unarmed civilian posing no risk—ten times. *Id.* at ¶ 43. Officers Christopher Reeve and Patrick White fired at her but missed. *Id.* at ¶¶ 40, 46. Plaintiff

brings claims on behalf of her daughter's estate under 42 U.S.C. § 1983 and seeks compensatory and punitive damages. *Id.* at ¶¶ 58-106.

Issues relating to Plaintiff's mental health arose during Plaintiff's deposition on April 8, 2022. Plaintiff testified that her daughter's death "took a toll" on her mentally and emotionally. DE 188-2 at 28. Plaintiff became depressed, socially isolated, and had trouble sleeping. *Id*. at 21, 28, 43, 88. Defense counsel asked whether Plaintiff received counseling after Alteria's death. Plaintiff responded affirmatively, testifying that she began seeing a psychologist, Dr. Tom Rider, for talk therapy weekly and she had been seeing Dr. Rider for the past three or four years. *Id*. at 29-32. Defense counsel asked whether Plaintiff participated in support groups, and Plaintiff indicated that she attended a Visiting Nurse Association support group and a group in Fort Pierce for parents of murder victims. *Id.* at 86-87. Defense counsel asked whether Plaintiff was prescribed any medications to help her cope with Alteria's death. *Id*. at 88. Plaintiff responded that when Alteria's body arrived at the hospital, Plaintiff had to be rushed to the back of the hospital and put on Ativan and other pills by the attending doctor. *Id*. at 90. Plaintiff also testified that her medical doctor, Dr. Kaitlyn Shuck, prescribed her sleeping pills for about one year before discontinuing the medication. Dr. Shuck also prescribed her "depression pills" which she currently takes on and off. *Id*. at 88-95. Plaintiff did not recall whether any medical professional had diagnosed her with any specific mental condition since Alteria's death. *Id*. at 98-99.

Based on her deposition testimony, Defendants now seek to compel Plaintiff's mental health and psychiatric records. Defendants claim they are entitled to review these records because Plaintiff has put her mental condition "in controversy" by seeking damages for emotional distress and mental anguish. Plaintiff responds that Defendants' motion is untimely having been filed

almost three months after the close of discovery.  Plaintiff also maintains that her mental health records are protected from disclosure by the Federal Rules of Evidence and legal precedent.

Pursuant to Federal Rule of Civil Procedure 26(b):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  Rule 26, however, also protects those from whom discovery is sought from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). District courts have broad discretion in ruling upon discovery matters.  *Outlaw v. Plantation Pipeline Co.*, No. 21-11787, 2022 WL 2904084, at *5 (11th Cir. July 22, 2022) (citing *Harris v. Chapman*, 97 F.3d 499, 506 (11th Cir. 1996)).

I am not convinced that Defendants' Motion to Compel is untimely.  When issues regarding Plaintiff's mental health treatment surfaced during her deposition, the parties agreed that the deposition transcript and any related motions regarding mental health would be filed under seal to keep Plaintiff's medical information confidential.  DE 188-2 at 90-91.  Defendants abided by that agreement.  On June 24, 2022, Defendants moved to file a motion to compel and Plaintiff's transcript under seal in accordance with Local Rule 5.4(b).[1]  DE 96.  Before that motion was ruled upon, Plaintiff filed the complete, unredacted transcript in response to Defendants' statements of material facts.  DE 188-2 and 190-2.  Realizing that Plaintiff had made her transcript part of the

---

[1] Under Local Rule 5.4(b), a party seeking to file information or documents under seal in an unsealed civil case shall "file and serve electronically via CM/ECF a motion to file under seal that sets forth the factual and legal basis for departing from the policy that Court filings are public and that describes the information or documents to be sealed (the 'proposed sealed material') with as much particularity as possible, but without attaching or revealing the content of the proposed sealed material.  The proposed sealed material shall not be filed unless the Court grants the motion to file under seal."

3

public record, Defendants withdrew the motion to seal as moot and subsequently filed this Motion to Compel, albeit after the discovery deadline had passed. DE 204. Defendants should not be prejudiced for following the parties' initial agreement to maintain the privacy of Plaintiff's information. Accordingly, I will not deny the Motion to Compel for untimeliness.

I am not convinced, however, that Plaintiff has put her mental condition in controversy such that she has waived the psychotherapist-patient privilege and Defendants should have access to her medical records. Under federal law, communications between a patient and licensed psychiatrists, psychotherapists, and social workers during treatment are privileged and, therefore, protected from compelled disclosure. *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). A plaintiff waives the privilege, however, by putting her mental condition in controversy. *Chase v. Nova Se. Univ., Inc.*, No. 11-61290-CIV, 2012 WL 1936082, at *3 (S.D. Fla. May 29, 2012) (noting that a majority of courts find that a party waives the psychotherapist-patient privilege by putting their mental condition at issue).

When determining whether a party has put their mental condition at issue, courts consider whether that party: (1) is making a tort claim for intentional or negligent infliction of emotional distress; (2) is alleging a specific mental or psychiatric injury or disorder; (3) is alleging unusually severe emotional distress; (4) is intending to offer expert testimony to support a claim for emotional distress; and (5) is conceding that his or her mental condition is in controversy. *McArdle v. City of Ocala, FL*, 451 F.Supp.3d 1304, 1311 (M.D. Fla. 2020) (citing Fed. R. Civ. P. 35(a) and *Chase*, 2012 WL 1936082 at *4).

None of the above factors are met here. Plaintiff's claims here are brought on behalf of her daughter's estate and she does not state a claim for intentional or negligent infliction of emotional distress on her own behalf. Although Plaintiff's counsel admits that Plaintiff "of course"

will seek compensation for her own emotional distress and mental anguish, DE 188-2 at 91, Plaintiff does not concede that her mental health is "in controversy." Plaintiff has not alleged any specific mental or psychiatric injury or disorder from her daughter's death; she has not claimed unusually severe emotional distress; and she is not intending to offer expert testimony to support her damages. Instead, Plaintiff's counsel represents that Plaintiff's testimony will be limited at trial to what courts often characterize as "garden-variety" emotional distress (DE 230). *See, e.g., In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19MD2885, 2021 WL 1088433, at *1 (N.D. Fla. Mar. 22, 2021) (explaining a plaintiff's claims of anxiety, mild depression, and difficulty sleeping were garden-variety type claims where plaintiff did not claim he suffered from clinical anxiety or depression and was not diagnosed or professionally treated for such conditions); *Winstead v. Layette County Board of County Commissioners*, 315 F.R.D. 612, 615 (N.D. Fla. 2016) (describing claims of anxiety, mild depression, and difficulty sleeping as garden-variety); *Sessa*, 2005 WL 8160229, at *3 (describing garden-variety claims for emotional distress as those which "are supported only by the plaintiff's testimony, described in vague terms, supported by little or no medical testimony, and involve such emotions as humiliation, shame, shock and moodiness").

According to her responsive filing, "Plaintiff does not plan to introduce any medical evidence of her emotional distress and will rely upon her own testimony that she (1) had difficulty sleeping, (2) was prescribed sleeping pills by a physician for a short period of time, (3) was depressed following Alteria's death and (4) has spoken to support groups and counselors about how Alteria's death has affected her." DE 214 at 5. For the most part, this testimony is garden-variety and does not waive psychotherapist-patient privilege. Although "garden-variety" seems an odd term for emotional distress experienced after the loss of a child, the case law makes clear

that a party can rely on her own testimony to talk generally about sleeplessness, mild depression, anxiety, shock, and isolation without being required to provide Defendants with *carte blanche* access to psychiatric or other mental health records.  Defendants point out that Plaintiff testified in her deposition about seeing a psychiatrist, being given Ativan and medications for depression and insomnia, and being diagnosed with anxiety years before her daughter's death.  DE 188-2 at 29, 31, 48, 88-90, 94-99.  But Plaintiff gave these details in response to specific questions asked of her by defense counsel.  Her responses to these questions do not demonstrate her intent to affirmatively place these matters in controversy.

So the bottom line is this:  Plaintiff is not required to disclose her medical records if she intends to testify generally about sleeplessness, depression, isolation, and other emotions she experienced after Alteria's death.  She also may testify that she saw a counselor and attended support groups without disclosing her medical records.  These statements are sufficiently general, vague, and garden-variety to keep the psychotherapist-patient privilege intact.  If, on the other hand, Plaintiff intends to testify about medical prescriptions, specifics of her therapy, or any diagnosis by therapists or medical providers, the relevant records in fairness must be opened to scrutiny.

The motion pending before me is a discovery motion, not a motion *in limine*.  I have no authority to rule on what testimony may or may not come in at trial; that is the province of the presiding District Judge.  My role is to determine whether Plaintiff must disclose her medical records as part of the discovery process.  Based on Plaintiff's assertion in her filing that she wants to testify about her physician prescribing her sleeping pills, I find that Plaintiff's records relating to her prescriptions must be disclosed if this is the intent.  On the other hand, if Plaintiff intends only to testify generally about "garden-variety" emotions and counseling/support group sessions

without reference to diagnoses or prescribed medications, then her medical records are protected from disclosure.

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Compel (DE 204) is **GRANTED IN PART AND DENIED IN PART** as more fully set forth below:

1. Plaintiff shall file, within three days of this Order, a notice ("Notice") describing her intended testimony pertaining to her emotional distress and mental anguish claims. In particular, the Notice shall make clear whether or not Plaintiff intends to introduce evidence or testimony as to any medical providers prescribing her medications or diagnosing her with any medical conditions resulting from emotional distress suffered following Alteria's death.

2. To the extent Plaintiff intends to testify about mental health diagnoses or prescriptions, including prescribed sleeping pills or anti-depressants, the Motion to Compel is **GRANTED**. Plaintiff shall produce to Defendants medical records pertaining to mental health diagnoses and/or prescriptions from March 19, 2015[2] to the present by no later than **Monday, February 13, 2023**.

3. To the extent that Plaintiff intends to limit her testimony to non-severe emotional distress without reference to diagnoses or prescriptions from medical providers, including for sleeping pills, the Motion to Compel is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 12th day of January, 2023.

_____
SHANIEK MILLS MAYNARD
U.S. MAGISTRATE JUDGE

---

[2] This time period is two years before Alteria's death through the present so Defendants may compare records from before Alteria's death until now.